UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **REDLINE STEEL, LLC,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:19-cv-01445-MHH |
| } | |
| **NUKON LAZER MAKINE** } | |
| **METAL SANAYO ve TIC AS, et al.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION AND ORDER[1]

Defendants Nukon Lazer Makine Metal Sanyai ve Tic, A.S. (Nukon Turkey), NukonUS, LLC, and Moore Machine Tools, LLC move, under Federal Rule of Civil Procedure 12(b)(2), to dismiss plaintiff Redline Steel's claims against Nukon Turkey for lack of personal jurisdiction. (Doc. 8). For the reasons below, the Court denies the motion.

**I. STANDARD OF REVIEW**

---

[1] The Court is issuing this opinion during a declared national emergency concerning COVID-19. To enable parties to pursue their rights during this emergency, the Court is continuing its work. For information about the timing of appeals, please review the information provided in the conclusion of this opinion. The Court is including this procedural information in each opinion that it issues during the national emergency.

A plaintiff who sues a non-resident defendant "'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of [personal] jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). A court must accept as true the jurisdictional allegations in the plaintiff's complaint unless "a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position.'" *Mosseri*, 736 F.3d at 1350 (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (internal quotation marks omitted)). If that happens, then the burden shifts back to the plaintiff to provide evidence supporting the court's exercise of jurisdiction over the defendant "unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When the parties present conflicting evidence, a court "must construe all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Nukon Turkey, a Turkish company, manufactures industrial steel-fabrication equipment in Turkey and sells and delivers the equipment to buyers in the United States through Nukon-US, Nukon Turkey's exclusive U.S. distributor. (Doc. 20-1, p. 2 – SEALED). Nukon-US's CEO is Matt Moore, and he "is responsible for all

sales of Nukon [Turkey] equipment in the United States." (Doc. 1-1, p. 4, ¶ 14). Mr. Moore is also the managing member of Moore Machine Tools, LLC. (Doc. 22-1, p. 14).

Redline Steel is an Alabama company specializing in "custom metal décor." (Doc. 1-1, p. 3, ¶ 8). To manufacture its metal products, Redline uses industrial laser machinery. (Doc. 1-1, p. 3, ¶ 9). In April 2017, Redline "began discussions with Nukon[US] to purchase two new Nukon NF Pro Vento 4 Kilowat Fiber Lasers . . . along with a Compact Lift Load/Unload Automatic System with 10-Shelf Tower . . . ." (Doc. 1-1, p. 4, ¶ 15). Mr. Moore negotiated the terms of the sale. On June 15, 2017, Redline agreed to purchase the first laser ("Alpha") for $560,000 and the Tower for $293,000. (Doc. 22-1, p. 185; Doc. 1-1, p. 4, ¶ 20). The sale terms were memorialized in an invoice providing that Alpha and the Tower were to be delivered to Redline's facility "within 7 days of October 7, 2017." (Doc. 1-1, p. 5, ¶ 28).

"To provide capacity while Redline waited for Alpha, NukonUS loaned Redline a Nukon Turkey-manufactured laser . . . ." (Doc. 22-1, p. 58). Nukon Turkey sent an employee, Furkan Aydin, to Redline's Alabama facility to oversee the loaner laser's installation and to train Redline's employees on its use. (Doc. 22-1, p. 78). Around the time of the loaner laser's installation, Redline agreed to purchase from NukonUS a second laser ("Bravo"). (Doc. 22-1, p. 189).

3

According to Redline, it communicated with Nukon Turkey employees "regarding when the Equipment would be delivered, installed, and fixed." (Doc. 1-1, p. 11, ¶ 74). Redline alleges that Martin Ertufan misrepresented, on several occasions, the delivery date for Bravo and the Tower. (Doc. 1-1, p. 15, ¶ 119). Alpha was delivered to Redline's facility on October 26, 2017, and Bravo was delivered on November 24, 2017. (Doc. 22-1, pp. 82, 205; Doc. 22-3, p. 223).

As with the loaner laser, Mr. Aydin traveled from Turkey to Redline's facility to oversee Alpha and Bravo's installations and to train Redline's employees on their use. (Doc. 22-1, pp. 78–79, 82). According to Mr. Moore, "we would do the installation – a lot of the installation. And then when it came to the really technical things, then we would have Furkan [Aydin], you know, get more involved to make sure that we were picking up everything about the – you know, the more technical side of the machine to make sure weren't any mistakes made." (Doc. 22-1, p. 83). During both lasers' installations, Mr. Aydin and a Redline employee, Mr. Whyte, signed a machine delivery letter providing that the "machine[s] [are] under 2 (Two) year warrant[ies] against manufacturer defects from delivery by **NUKON LAZER MAKINA METAL SAN VE TIC., A.S.**" (Doc. 22-1, p. 205 (emphasis in original)).

According to Redline, the company experienced post-installation issues with both lasers. Redline contends that Nukon Turkey employees misrepresented "when

4

the Equipment would be . . . fixed." (Doc. 1-1, p. 15, ¶ 119). Specifically, Redline alleges that Nukon Turkey and NukonUS employees made "vague promises to perform maintenance and repair[,]" maintenance and repair that Redline alleges was never performed. (Doc. 1-1, pp. 6–8, ¶¶ 39, 51).

After the parties unsuccessfully tried to resolve the issues regarding the equipment, on June 19, 2019, Redline filed suit in the Circuit Court of Limestone County, Alabama. (Doc. 1-1). Nukon Turkey removed the case to federal court on September 2, 2019. (Doc. 1).

### III. ANALYSIS

A federal district court's exercise of personal jurisdiction must comply with the long-arm statute of the state in which the federal court sits and with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Here, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b); *Sieber v. Campbell*, 801 So. 2d 641, 644 (Ala. 2001)).

For specific personal jurisdiction, due process requires that the defendant have "minimum contacts" with the forum state—here, Alabama; that the plaintiff's claims "arise out of or relate to" those contacts; and that maintenance of the suit not violate

notions of fair play and substantial justice.  *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018) (citing *Mosseri*, 736 F.3d at 1355).

Regarding the requirement that a plaintiff's claim "arise out of or relate to" the defendant's contacts with the forum, the Eleventh Circuit has held that the focus must be on the "'contacts the defendant [itself] creates with the forum'" and "not the plaintiff's contacts with the forum or even the defendant's contacts with the plaintiff[]."  *Waite*, 901 F.3d at 1316 (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).  As a result, a claim "arise[s] out of or relate[s] to" a defendant's contacts with a forum only if the contacts are a "but-for" cause of the claim.  *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (citation omitted).

Nukon Turkey had the following contacts with Alabama:  Furkan Aydin "assisted with the Loaner Laser's installation in Redline's Alabama facility and trained Redline's employees on July 21, 2017"; Nukon Turkey manufactured 10,000 "Tree of Life" products and shipped them directly to Redline's Alabama facility (Doc. 22-1, p. 189); Mr. Aydin travelled from Turkey to Alabama and, over several days, assisted with installation of the Alpha and Bravo lasers and trained Redline's employees on their use; Mr. Aydin signed two letters—one for each laser—stating the "machine[s] [are] under 2 (Two) year warrant[ies] against manufacturer defects from delivery by **NUKON LAZER MAKINA METAL SAN VE TIC., A.S.**"; Mr. Ertufan "coordinated directly with Redline regarding the Tower's delivery and

installation"; Mr. Ertufan exchanged with Redline employees more than 1,400 "WhatsApp" messages between December of 2017 and August of 2018 (Mr. Aydin had similar communications); Mr. Ertufan visited Redline's Alabama facility in March of 2018, accompanied by Mr. Ozturk; in November of 2018, Mr. Ozturk, accompanied by Mr. Aydin, visited Redline's facility to replace the cutting heads of Alpha and Bravo; Mr. Aydin made three trips between June 2018 and June 2019 to repair the Alpha and Bravo lasers and train Redline employees; and Nukon Turkey shipped to Redline's facility parts for Alpha and Bravo.

Redline Steel alleges that Nukon Turkey breached express warranties and made fraudulent representations to Redline Steel about the equipment. (Doc. 1-1, pp. 12–13, 15, ¶¶ 91–96, 119–20). Both claims arise out of or relate to Nukon Turkey's contacts with Alabama.

Redline alleges Nukon Turkey warrantied Alpha and Bravo for two years "against manufacturer defects from delivery by **NUKON LAZER MAKINE METAL SAN VE TIC., S.A.**" (Doc. 22-1, p. 205; Doc. 22-3, pp. 213, 223) (emphasis in original). According to Redline, these warranties were included in "machine delivery letters" executed by Mr. Aydin while he installed Alpha and Bravo at Redline's Alabama facility. (Doc. 22-3, p. 213 – Delivery Letter for "Alpha" with, pp. 218-21, Mr. Aydin's signature; Doc. 22-3, p. 223 – Delivery Letter

for "Bravo"). Accordingly, Redline contends that Nukon Turkey's conduct in Alabama was a but-for cause of Redline's breach of warranty claim.

Redline also alleges that Nukon Turkey employees made false representations about the equipment. According to Redline, Mr. Ertufan, Mr. Aydin, Mr. Ozturk, and Mr. Aslan misrepresented to Redline employees in e-mail, WhatsApp, and in-person communications, "when [Alpha, Bravo, and the Tower] would be delivered, installed, and fixed." (Doc. 23, p. 12; *see* Doc. 22-4, p. 5; Doc. 22-4, pp. 9–65 – WhatsApp messages between Mr. Ertufan and Redline employees; Doc. 22-7, pp. 8–9; Doc. 22-8, p. 3). The alleged false representations related to equipment sent to Redline's Alabama facility that Nukon Turkey employees helped to install, repair, and maintain. Accordingly, Redline's fraud claim arises out of or relates to Nukon Turkey's contacts with Alabama.

The purposeful availment requirement for specific personal jurisdiction asks whether Nukon Turkey "deliberately engaged in significant activities within [Alabama] or created continuing obligations with residents of that forum" and "ensures that a defendant will not be subject to jurisdiction based solely on 'random, fortuitous, or attenuated contacts.'" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (quotations and citations omitted).

Purposeful availment is "often found where . . . plus factors connect the defendant to the jurisdiction." *Diamond Crystal*, 593 F.3d at 1268 (citing *Sloss Indus.*, 488 F.3d at 931–33). "Plus factors" include "initiating the contractual relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the plaintiff for inspection or use in shipping, participating in the manufacturing process, [and] establishing a relationship by placing multiple orders . . . ." *Diamond Crystal*, 593 F.3d at 1268–69 (footnotes and citations omitted).

On several occasions, Nukon Turkey sent representatives to Redline's Alabama facility. And while a defendant's presence in the forum does not automatically amount to purposeful availment, "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." *Burger King*, 471 U.S. at 477. What's more, Nukon Turkey's decision to send representatives to Redline's facility, and the conduct of those representatives, establish a course of dealing between Nukon Turkey and Redline, demonstrating that Nukon Turkey was more than a passive seller merely placing products into the stream of commerce. *See Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007).

Over several months, Nukon Turkey shipped more than one-million dollars' worth of industrial equipment to Redline knowing that Redline was in Alabama. On three occasions, Nukon Turkey sent Mr. Aydin to Alabama to oversee the

9

installation of equipment at Redline's facility. On the second and third trip—which facilitated the installation of Alpha and Bravo, respectively—Mr. Aydin warrantied the equipment to be installed. These contacts indicate a purposeful connection between Nukon Turkey and Alabama. Sending a representative to another country is not "random" or "fortuitous." *See Diamond Crystal*, 593 F.3d at 1268–69 (citing *Sloss Indus.*, 488 F.3d at 931) (noting that a defendant's visit to the plaintiff's factory to assess or improve quality supports a finding of a purposeful connection between the defendant and the forum). And providing a two-year warranty, obligating Nukon Turkey to provide to Redline continuing repair and maintenance support, is similarly deliberate. *Burger King*, 471 U.S. at 473 (emphasizing that defendants who "create continuing relationships and obligations with citizens" of a state are "subject to regulation and sanctions" in that state). Accordingly, Nukon Turkey reasonably could have foreseen being sued in an Alabama court for damages relating to the alleged warranties for Alpha and Bravo.

During the two companies' course of dealings, Nukon Turkey employees regularly communicated with Redline employees. These communications concerned delivery and installation dates, repair and maintenance timelines, and general troubleshooting for Alpha and Bravo—meaning the communications related to Nukon Turkey and Redline's course of dealings that established a purposeful connection between Nukon Turkey and Alabama. Redline alleges that during these

communications, Nukon Turkey employees intentionally misrepresented "when the Equipment would be delivered, installed, and fixed." (Doc. 1-1, p. 15, ¶ 119).

In intentional tort cases, a single tortious act can establish purposeful availment when the tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) (citations omitted); *see Calder v. Jones*, 465 U.S. 783, (1984). Here, Nukon Turkey knew that Redline was an Alabama company, with its principal place of business in Alabama, and that communication directed towards Redline's employees would be directed at Alabama. For the same reason, Nukon Turkey also knew that the impact of misrepresentations made to Redline's employees relating to the Tower, Alpha, or Bravo would be felt in Alabama. *Cf. Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) (concluding that statements by defendant, a lawyer residing in Michigan, to clients the defendant knew resided in Florida supported a Florida federal court's exercise of jurisdiction over the defendant). Thus, Nukon Turkey reasonably could have anticipated being sued in an Alabama court for misrepresentations relating to Alpha, Bravo, or the Tower.

Accordingly, Nukon Turkey purposefully established sufficient minimum contacts with Alabama to be sued in Alabama for breach of warranty and fraud relating to the Tower, Alpha, and Bravo.

Exercise of personal jurisdiction over Nukon Turkey must comport with fair play and substantial justice. To determine whether exercising jurisdiction over Nukon Turkey would be fair, the Court must consider the burden on Nukon Turkey, Alabama's interest in adjudicating the dispute, Redline's interest in litigating in a convenient and effective forum, and the judicial system's interest in resolving the dispute. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–15 (1987). Based on these factors, the Court concludes that it is not unfair to subject Nukon Turkey to the jurisdiction of an Alabama court.

First, there are some burdens associated with a Turkish company litigating in an Alabama federal court. But "modern methods of transportation and communication have significantly alleviated any burden" resulting from travel. *Stubbs*, 447 F.3d at 1364 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).[2]

Moreover, Redline and Alabama's interests in litigating in Alabama weigh heavily in favor of a finding of jurisdiction. Alabama is a convenient forum for Redline, and Alabama has an interest in ensuring that its companies have a forum for vindicating their rights.

---

[2] The Court is issuing this opinion during the COVID-19 pandemic. During the pandemic, to minimize travel, many depositions are being held by videoconference on platforms such as ZOOM.

Finally, exercising personal jurisdiction over Nukon Turkey would not undermine the needs of the judicial system or fundamental social policies. Turkey might have an interest in adjudicating the dispute here. But considering that the allegedly defective machinery is in Alabama and that Nukon Turkey sent representatives to Redline's facility, "it is not constitutionally unreasonable to hale [the defendants] into federal court in Alabama." *Sloss Indus.*, 488 F.3d at 934.[3]

## IV.   CONCLUSION

For the reasons above, exercising jurisdiction over Nukon Turkey regarding Redline's claims against the company is consistent with Alabama's long-arm statute and due process. Accordingly, the Court denies Nukon Turkey's motion to dismiss. (Doc. 8).

**DONE** and **ORDERED** this May 13, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[3] In its reply brief, Nukon Turkey argues that Redline knew that Nukon Turkey employees who travelled to Alabama were acting on behalf of Nukon-US, not Nukon Turkey. (Doc. 25, p. 6). The argument is not persuasive. First, as stated, the Court must draw all inferences from the evidence in favor of Redline. What's more, Redline's knowledge that Nukon Turkey employees were acting on behalf of Nukon US might affect whether the actions of its employees subject Nukon Turkey to liability. But questions of attribution for purposes of liability are distinct from questions of minimum contacts. Nukon Turkey purposefully sent its employees to Alabama to install industrial equipment that it manufactured, and Nukon Turkey's employees purposefully made representations to Redline employees, representations that Redline Steel now alleges were fraudulent. That conduct is sufficient to support an exercise of jurisdiction.