UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **REDLINE STEEL, LLC,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:19-cv-01445-MHH |
| } | |
| **NUKON LAZER MAKINE** } | |
| **METAL SANAYI VE TIC, A.S.;** } | |
| **NUKONUS, LLC; and MOORE** } | |
| **MACHINE TOOLS, LLC,** | |
| | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case arises from a series of business transactions between Redline Steel, LLC and the Nukon defendants regarding the purchase and operation of industrial laser-cutting machines.[1]  In its complaint, Redline asserts claims for breach of contract, breach of express warranty, breach of statutory warranties, negligent repair, and fraud.  (Doc. 30).  The Nukon defendants have moved for summary judgment on Redline's claims.  (Doc. 38).

---

[1] Redline asserts claims against Nukon Lazer Makine Metal Sanayi Ve Tic, A.S.; NUKONUS, LLC; and Moore Machine Tools, LLC.  The Court uses "Nukon Turkey," "Nukon US," and "Moore Machine Tools," respectively, to refer to these parties.

1

The Nukon defendants assert counterclaims against Redline for breach of contract, unjust enrichment, and slander. (Doc. 14). Redline has moved for summary judgment on portions of its breach of contract and fraud claims, on part of the Nukon defendants' breach of contract counterclaim, and on the entirety of the Nukon defendants' unjust enrichment and slander counterclaims. (Doc. 50). Redline also has filed a motion to strike certain parts of Metin Ertufan's affidavits. (Doc. 64).[2]

Many of the claims in this matter involve readily-apparent disputes of material fact. Those disputes are genuine, and they must be decided by a jury. This opinion addresses the issues that the Court may resolve as a matter of law.

The opinion is organized in four sections. First, the Court outlines the standard for a Rule 56 motion for summary judgment. Then, the Court provides a

---

[2] Effective December 1, 2010, motions to strike summary judgment evidence no longer are appropriate. *See* FED. R. CIV. P. 56(c)(2) advisory committee note (2010 amendments) ("There is no need to make a separate motion to strike."); *Campbell v. Shinseki*, 546 Fed. Appx. 874, 879 (11th Cir. 2013) ("The plain meaning of [amended Rule 56(c)(2)] show[s] that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily.") (citing *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012)). At the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). Accordingly, objections to evidence supporting or opposing a motion for summary judgment should be made in the objecting party's brief.

The Court construes Redline's motion to strike as an objection under Federal Rule of Civil Procedure 56(c)(2). Because the Court did not need to rely on Mr. Ertufan's testimony, (Doc. 40, p. 2, ¶¶ 4–5; Doc. 55, pp. 1–2, ¶¶ 4–5), for purposes of this opinion, Redline's motion to strike, (Doc. 64), is moot.

brief overview of the parties' summary judgment evidence. Next, the Court addresses the Nukon defendants' motion for summary judgment, viewing the evidence in the light most favorable to Redline. Finally, the Court evaluates Redline's motion for partial summary judgment, viewing the evidence in the light most favorable to the Nukon defendants.

# I.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a material fact precluding summary judgment, the party opposing summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

"[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving,

but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of certain evidence, the court cannot make credibility determinations; that is the work of jurors. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in the non-moving party's favor. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

Accordingly, when evaluating the Nukon defendants' motion for summary judgment, the Court views the evidence in the light most favorable to Redline and draws all reasonable inferences in its favor. When considering Redline's motion for partial summary judgment, the Court views the evidence in the light most favorable to the Nukon defendants and draws all reasonable inferences in their favor.

## II.

Redline Steel, LLC is a manufacturing company that specializes in "the production and sale of home metal décor." (Doc. 59-1, p. 2, ¶ 3). Colin Wayne Erwin organized Redline in early 2016; he is the entity's sole owner. (Doc. 44, p. 5, tpp. 10–11; Doc. 59-1, p. 2, ¶ 3). Redline sells stock items which the company keeps in inventory and custom items which the company makes to order. (Doc. 59-1, p.

20, ¶ 82). To create its products, Redline uses industrial fiber laser cutting machines to cut patterns out of sheets of steel. (Doc. 59-1, p. 3, ¶ 5).

Initially, Redline used plasma tables to create its products. (Doc. 43, p. 4, tp. 9; Doc. 44, p. 5, tpp. 11–12). Plasma tables are industrial machines which cost approximately $20,000 and are used to cut steel. (Doc. 44, p. 5, tp. 11; Doc. 59-1, p. 4, ¶ 10). Their production capacity is limited. (Doc. 59-1, p. 4, ¶ 11). Industrial lasers offer "massive differences of cut speed, cut quality, the amount of slag and just stuff on the back of pieces." (Doc. 44, p. 5, tp. 11). As Redline grew, an employee, Brad Ferch, approached Mr. Erwin about upgrading the equipment to Nukon fiber lasers. (Doc 44, p. 7, tpp. 19–21; Doc. 59-1, p. 4, ¶ 13). Nukon fiber lasers cost approximately $500,000. (Doc. 46, p. 2). Mr. Erwin decided to make the significant investment to increase production capacity and potentially increase sales. (Doc. 59-1, pp. 4–5, ¶ 13).

Nukon Turkey, a Turkish company, manufactures laser machines. (Doc. 42, pp. 4–5, tpp. 16–17). The company does not keep machines in stock; it builds each machine to order. (Doc. 42, p. 7, tp. 27). Nukon Turkey has distributors in each country where it does business. (Doc. 42, p. 4, tp. 14).

Nukon Turkey manufactures industrial steel-fabrication equipment in Turkey and sells and delivers the equipment to buyers in the United States through Nukon US, Nukon Turkey's exclusive U.S. distributor. (Doc. 20-1, p. 2 – SEALED). Matt

Moore is the CEO of Nukon US. (Doc. 49-9, p. 14, tp. 13). Mr. Moore also is the CEO of Moore Machine Tools, LLC. (Doc. 49-9, p. 14, tp. 13). Nukon Turkey provides marketing materials to Nukon US and technical support to Nukon US's customers. (Doc. 42, p. 6, tpp. 22–24). When a customer reports a problem with a Nukon laser, Nukon US troubleshoots the problem and resolves some problems independently. Nukon Turkey handles more serious technical issues. (Doc. 42, p. 7, tpp. 25–26).

Redline bought two fiber lasers and a compact lift load/unload automation system with a ten-shelf tower from Nukon US. (Doc. 30, p. 4, ¶ 18). Redline bought the fiber lasers to cut sheets of steel for Redline products. Redline referred to the first fiber laser as "Alpha" and to the second as "Bravo." (Doc. 44, p. 7, tp. 20). Redline bought the "Tower" to make production more efficient and orderly. (Doc. 42, pp. 15–16, tpp. 60–63).

There is no single purchase agreement between Redline and the Nukon defendants for the equipment. Instead, the "purchase agreement" involves a series of emails, invoices, and verbal agreements. (Doc. 43, p. 8, tpp. 23–24). The parties contest the terms of the "purchase agreement," and Redline contests the extent to which the Nukon defendants fulfilled those terms. Redline complains that it experienced post-installation issues with both lasers, (Doc. 30, pp. 8, 10, ¶¶ 47, 67), and that the Nukon defendants were responsible for and failed to remedy the

operating issues, (Doc. 30, p. 15, ¶ 101). The Nukon defendants attribute Redline's problems with the lasers to Redline's purportedly improper electrical infrastructure, lack of maintenance, and untrained employees. The Nukon defendants contend that they addressed Redline's complaints to the extent required by the terms of the parties' contractual relationship. (Doc. 46, pp. 2–3).

## III.

*Moore Machine Tools*

Mr. Moore is the CEO of both Nukon US and Moore Machine Tools. (Doc. 49-9, p. 14, tp. 13). By design, Nukon US is a distinct entity from Moore Machine Tools. (Doc. 49-9, pp. 20–21, tpp. 19–20). Nukon US subcontracts its employees through Moore Machine Tools; Mr. Moore is the only employee on Nukon US's payroll. (Doc. 49-9, p. 21, tp. 20).

Redline has named Moore Machine Tools as a defendant in this action and has asserted a fraud claim against the company. (Doc. 30, p. 24). Redline alleges that "[a]t all relevant times, [Mr.] Moore was acting in his capacity as National Sales Manager for NukonUS, agent for Nukon Turkey, and Managing Member of [Moore Machine Tools]." (Doc. 30, p. 24, ¶ 166). In their brief in support of their motion for summary judgment, the Nukon defendants argue that Mr. Moore's statements on behalf of Nukon US are not attributable to Moore Machine Tools. (Doc. 46, p. 21). Redline disagrees, arguing that Mr. Moore communicated with Redline from his

7

Moore Machine Tools email address, that "invoices from Nukon Turkey for Alpha and Bravo expressly reference [Moore Machine Tools] as the recipient of the lasers, rather than NukonUS," that a "bill of lading show[s] Moore Machine Tools as the consignee," and that Mr. Moore and two Moore Machine Tools employees were present at Redline for the installation of the Alpha and Bravo lasers. (Doc. 60, pp. 34–35).

After sending the invoice for Alpha and the Tower, (Doc. 45-1, pp. 2–3), Mr. Moore did send several emails to Redline from his Moore Machine Tools email address with his Moore Machine Tools email signature.[3] The Nukon defendants assert that Mr. Moore inadvertently used his Moore Machine Tools email account to send these messages. (Doc. 46, p. 11, ¶ 49). In the text of the messages, Mr. Moore did not mention Moore Machine Tools or indicate that the company was involved in the Redline transactions. Mr. Moore attached Nukon-branded documents to several messages. (Doc. 45-6, pp. 4–29; Doc. 45-7, pp. 3–26). All invoices between Redline and Mr. Moore, including one drafted by Redline, identify Nukon US, not Moore

---

[3] *See, e.g.*, Doc. 45-6, p. 2 (sending Nukon electrical information and the pre-installation guide); Doc. 45-7, p. 2 (resending a highlighted version of the Nukon pre-installation guide); Doc. 45-8, pp. 2–3, 5 (communicating with Jordan Hill about grounding resistance); Doc. 45-12, p. 2 (discussing electrical drawings); Doc. 45-15, p. 2 (providing potential solutions for the Tower situation); Doc. 47-2, p. 1 (discussing voltage levels); Doc. 48-6, pp. 1–2 (answering Mr. Erwin's questions and discussing the Tower shipment); Doc. 49-17, pp. 17, 20–21 (discussing the Tower installation and moving the Nukon lasers); Doc. 49-17, pp. 29–30 (discussing issues with the lasers); Doc. 57-17, p. 2 (resending the final invoices for Alpha, the Tower, and Bravo). This list is not exhaustive.

Machine Tools, as the contracting party. (Doc. 45-1, p. 3; Doc. 45-5, p. 2; Doc. 45-10, p. 12; Doc. 49-11, p. 1; Doc. 57-17, pp. 3–4). No evidence in the record suggests that Redline believed that it was conducting business with Moore Machine Tools rather than Nukon US.

Nukon Turkey invoices that list Moore Machine Tools as a recipient of the lasers and bills of lading that show Moore Machine Tools as the consignee do not help Redline make a claim against Moore Machine Tools because no evidence suggests that Redline was aware of the documents or that the documents impacted Redline's understanding of its business relationship with Mr. Moore.

Likewise, Redline's assertion that two "apparent" Moore Machine Tools employees were present for the installation of Alpha and Bravo is not persuasive. (Doc. 60, p. 34).[4] Mr. Moore testified that Nukon US subcontracts its employees through Moore Machine Tools. (Doc. 49-9, p. 21, tp. 20). Therefore, an employee of Nukon US also is an employee of Moore Machine Tools, but no evidence indicates that the employees present during installation of the lasers attended on behalf of Moore Machine Tools. And no evidence suggests that Redline believed

---

[4] Redline cites Mr. Moore's testimony in which he responds to the question, "What employees from NukonUS [were present when NukonUS installed new 'heads' on the loaner laser]?" (Doc. 49-9, pp. 76–77, tpp. 75–76). Mr. Moore answered that he believed his son, Beau Moore, was present on one occasion and Chance Peterson was present on another. (Doc. 49-9, p. 77, tp. 76). When asked if Mr. Peterson is an employee of Moore Machine Tools, Mr. Moore indicated that he was at the time. (Doc. 49-9, p. 77, tp. 76).

the employees were present in their capacity as Moore Machine Tools employees rather than Nukon US employees.

Accordingly, because Redline has not presented evidence from which jurors could conclude that Redline believed that it was working with Moore Machine Tools such that Mr. Moore's statements and conduct could be attributed to that company rather than Nukon US, the Court will grant the Nukon defendants' motion for summary judgment on Redline's claim against Moore Machine Tools for fraud.

## IV.

*Unjust Enrichment*

The Nukon defendants assert a counterclaim against Redline for unjust enrichment. (Doc. 14, p. 4). The Nukon defendants argue that Redline was unjustly enriched because the company "knowingly accepted the benefit of Nukon-US's support and replacement parts," even though Redline allegedly knew it had caused the problems with the machinery. (Doc. 14, p. 4, ¶ 32). The Nukon defendants contend that Redline was not entitled to those benefits because the laser problems "did not result from defects in the [e]quipment." (Doc. 14, p. 4, ¶ 33). And according to the Nukon defendants, Redline has retained possession of Nukon Turkey equipment without fully paying for it. (Doc. 14, p. 4, ¶ 34).[5]

---

[5] Redline has not paid the final 10% of the Tower's purchase price, owed on completion of installation and software. (Doc. 50, p. 11). The Tower has been delivered to Redline but not installed. (Doc. 57, p. 16, ¶ 101; Doc. 59-1, p. 12, ¶¶ 47–48). There is a genuine dispute of material

10

Under Alabama law and Utah law, a claim for unjust enrichment is not available when an express contract governs the subject matter of the parties' dispute. *See Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996) ("[U]nder Alabama law, claims of both an express and an implied contract on the same subject matter are generally incompatible.") (citing *Vardaman v. Florence City Bd. of Educ.*, 544 So. 2d 962 (Ala. 1989); *Hendrix, Mohr & Yardley, Inc. v. City of Daphne*, 359 So. 2d 792 (Ala. 1978); *Robinson Lumber Co. v. Sager*, 75 So. 309 (Ala. 1917)); *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468–69 (Utah 2012) ("'[W]here an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available.'") (quoting *Selvig v. Blockbuster Enters., LC*, 266 P.3d 691, 698 (Utah 2011)).[6] Redline asks the Court

---

fact regarding responsibility for the failure to install the Tower; the parties point fingers at one another.

[6] A federal court in a diversity case must "apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992) (citing *Goodwin v. George Fischer Foundry Sys., Inc.*, 769 F.2d 708, 711 (11th Cir. 1985)). For contract claims, Alabama's choice of law rule "provides that the law of the state wherein the contract was executed governs questions regarding the validity and interpretation of the contract." *Am. Nonwovens, Inc. v. Non Wovens Eng'g, S.R.L.*, 648 So. 2d 565, 567 (Ala. 1994) (citing *Harrison v. Ins. Co. of N. Am.*, 318 So. 2d 253, 257 (Ala. 1975); *Macey v. Crum*, 30 So. 2d 666, 669 (Ala. 1947); *Furst & Thomas v. Sandlin*, 94 So. 740, 742 (Ala. 1922)). For tort claims, "'an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.'" *Ex parte U.S. Bank. Nat'l Ass'n*, 148 So. 3d 1060, 1069 (Ala. 2014) (quoting *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)).

In deciding that there is "a distinct absence of authority" regarding the appropriate statute of limitations applicable to unjust enrichment claims, the Alabama Supreme Court acknowledged that "'Alabama state courts have not decided whether unjust-enrichment claims are tort claims or implied-contract claims. . . .'" *Snider v. Morgan*, 113 So. 3d 643, 655 (Ala. 2012) (quoting *Auburn Univ. v. Int'l Bus. Machs., Corp.*, 716 F. Supp. 2d 1114, 1117 (M.D. Ala. 2010)).

to enter judgment in its favor on the Nukon defendants' unjust enrichment counterclaim, arguing that the "purchase agreement" between the parties is an express agreement that governs "Redline's payment obligations and NukonUS's support and replacement part obligations." (Doc. 50, p. 20).

Nukon Turkey and Nukon US do not contend that unjust enrichment is an option even when an express contract governs the parties' relationship. (Doc. 58, p. 27). Nukon Turkey and Nukon US do not deny that an express contract exists between the parties. (Doc. 58, p. 27). Instead, the Nukon defendants argue that "no express contract covers the substantial resources—in excess of any contractual obligations—that Defendants expended in supporting and repairing the lasers as a result of Redline's neglect and misuse." (Doc. 58, p. 27). If the Nukon defendants had provided evidence to support their argument, their unjust enrichment claim might survive Redline's summary judgment motion. But the Nukon defendants have not cited evidence that would allow the Court, viewing the evidence in the light most favorable to the Nukon defendants, to conclude that the Nukon defendants provided products or services beyond those required by the parties' express agreement. The

---

Under Alabama's choice of law rule, if an unjust enrichment claim rests on an implied-contract theory, then Alabama law applies. If an unjust enrichment claim rests on a tort theory, then Utah law applies. Because Alabama law and Utah law regarding unjust enrichment do not conflict, the Court does not have to choose; the Court applies the law of Alabama and Utah in its analysis.

Nukon defendants offer only a conclusory sentence to counter Redline's motion for partial summary judgment.

Because the Nukon defendants have not identified "specific facts showing that there is a genuine issue for trial," *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007), the Court will grant Redline's motion for summary judgment on the Nukon defendants' unjust enrichment counterclaim.

### *Slander*

Finally, Redline seeks judgment in its favor on the Nukon defendants' counterclaim for slander. (Doc. 50, p. 21). In their brief in opposition to Redline's summary judgment motion, the Nukon defendants did not respond to Redline's arguments. (Doc. 58). Therefore, Redline is entitled to judgment in its favor on the Nukon defendants' slander claim. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him' . . . [and] grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (quoting *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986) and citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994)); *see also B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 Fed. Appx. 785, 790–91 (11th Cir. 2018).

## Conclusion

For the reasons stated above, the Court enters judgment in favor of Moore Machine Tools on Redline's fraud claim against the company, and the Court enters judgment in favor of Redline on the Nukon defendants' counterclaims for unjust enrichment and slander. The Court denies the balance of the parties' summary judgment motions. By separate order, the Court will schedule this matter for a telephone conference with the parties to discuss the path forward.

The Court asks the Clerk to please term Docs. 38, 50, and 64 and to please term Moore Machine Tools as a party to this action.

**DONE** and **ORDERED** this October 8, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE